**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**CRAIG LANG,**

**Plaintiff,**

**v.**

**PTC, INC.,**

**Defendant.**

Civ. No. 21-04451 (KM) (ESK)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

This case involves a dispute between an employee, plaintiff Lang, and his former employer, defendant PTC, Inc., over unpaid wages or sales incentives. In their employment contract, the parties agreed to arbitrate such disputes, and Lang did commence an arbitration. The JAMS arbitrator ruled that the JAMS arbitration rules required PTC to bear the costs of arbitration, but correctly concluded that interpretation of the arbitration Agreement itself was reserved for the court. Lang then filed the complaint in this action, reasserting his substantive claims against PTC, and also asserting that the Agreement to arbitrate is unenforceable, because any requirement that he pay the arbitration fees and costs would unduly burden his ability to pursue his claims.

PTC moves to dismiss the complaint, compel a return to arbitration, and order *pro rata* fee sharing. (DE 3.) For the following reasons, the motion of PTC is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### a. The Agreement to arbitrate

Plaintiff Craig Lang worked as an "Internet of Things Sales Representative" for PTC, Inc., beginning in 2017. (Compl. ¶ 2.)[1] Lang was compensated with a mixture of salary and commissions. He alleges that PTC denied him hundreds of thousands of dollars of commissions through a mix of broken promises and accounting chicanery. (Compl. ¶ 31–56.) The details of Lang's compensation scheme and the merits of his contentions are not directly relevant at this stage. Upon being hired by PTC, Lang signed a "Proprietary Information Agreement," within which is an arbitration agreement that requires him to arbitrate most employment related claims against PTC. (Compl. ¶ 75; Compl., Ex. A.)

The five interrelated sections of the arbitration agreement potentially relevant to the case are set out in the margin.[2] I summarize them as follows.

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry number

Compl. = Complaint (DE 1)

Agreement = Proprietary Information Agreement (DE 1, Ex. A)

[2] The language of the relevant sections of the Agreement is as follows:

14(a): The arbitration will be conducted by a single arbitrator in accordance with the Comprehensive Arbitration Rules and Procedures of JAMS (www.jamsadr.com) … The arbitrator will be selected in accordance with JAMS' arbitrator selection rules.

14(b)(iii): Any dispute about the enforceability, applicability or interpretation of any portion of this Section 14 shall be submitted to and resolved by a court of competent jurisdiction only and shall not under any circumstances be submitted to or resolved by any arbitrator or organization sponsoring arbitration.

14(b)(iv): If a court of competent jurisdiction were for any reason to find Section 14(a) above, invalid or unenforceable as to any Claim Subject to Arbitration, PTC would no longer be obligated to arbitrate such Claim Subject to Arbitration.

14(h): PTC agrees to reimburse me for any administrative filing fees JAMS may impose to initiate arbitration. PTC further agrees to pay all travel, lodging, and meal costs of the arbitrator. PTC also agrees that if it prevails at the arbitration it will not

First, § 14(a) sets out the broad outlines of how an arbitration would be administered. It provides that the "arbitration will be conducted by a single arbitrator in accordance with the Comprehensive Arbitration Rules and Procedures of JAMS (www.jamsadr.com)" and that the "arbitrator will be selected in accordance with JAMS' arbitrator selection rules." (Agreement § 14(a).)

Second, § 14(b)(iii) requires that "Any dispute about the enforceability, applicability or interpretation of any portion of this Section 14" be submitted to a court rather than decided by an arbitrator. (Agreement § 14(b)(iii).) This section is the basis for Lang's having filed this action in federal court.

Third, § 14(b)(iv) states that if a court finds Section 14(a) "invalid or unenforceable as to any Claim Subject to Arbitration, PTC would no longer be obligated to arbitrate such Claim Subject to Arbitration." (Agreement § 14(b)(iv).)

Fourth, § 14(h) is the only section that directly addresses arbitration fees. This section states that PTC will reimburse the employee for any JAMS filing fees and that PTC will "pay all travel, lodging, and meal costs of the arbitrator." (Agreement § 14(h).) It does not specify who will pay other arbitration costs.

Fifth, § 19 is a general severability clause, which states that if any part of the agreement is held invalid, "this Agreement will be deemed reformed so that it would be enforceable to the maximum extent permitted in such

---

seek to recover costs from me, even if it would otherwise be entitled to do so. However, PTC retains any rights it may have to seek recovery of its attorneys' fees.

14(k): To the extent any provision of this Section 14 Agreement conflicts with any standard rule of JAMS the provisions of this Agreement will prevail.

19: If any provision of this Agreement will be held to be invalid or unenforceable in any jurisdiction(s), such circumstance will not have the effect of rendering the provision in question unenforceable in any other jurisdiction or in any other case or circumstance or of rendering any provision hereof unenforceable. Instead, this Agreement will be deemed reformed so that it would be enforceable to the maximum extent permitted in such jurisdiction(s). (Compl., Ex. A.)

jurisdiction(s).” (Agreement § 19.) There is no further clarification of how this section relates to § 14(b)(iv).

Finally, § 17 of the Agreement states that the agreement is governed by Massachusetts law. (Agreement § 17.)

**b. Initial proceedings in arbitration and fee dispute**

After the compensation dispute arose, Lang duly filed a Demand for Arbitration with JAMS, as required by the Agreement. (DE 3-3, Ex. 1.) Lang sent PTC a copy of the Demand on October 6, 2020. (*Id.*)

On November 24, 2020, the parties were informed by letter that JAMS had appointed the Hon. Carolyn E. Demarest (Ret.) as arbitrator. (DE 3-3, Ex. 2.) That same letter stated that the arbitration would be “administered consistent with the enclosed JAMS policy on Employment Arbitration, Minimum Standards of Procedural Fairness” and explained that “the only fee a consumer employee may be required to pay is $400 of the Filing Fee. All other costs, including the remainder of the Filing Fee, must be borne by the company.” (*Id.*) Finally, the letter stated that “[t]he paying party [*i.e.,* PTC] has been billed a preliminary deposit.” (*Id.*) That invoice, for $5,000, was addressed to PTC on November 20, 2020. PTC promptly paid it. (DE 8, Ex. D.)

At the Preliminary Conference with the arbitrator in December 2020, however, PTC stated for the first time that it believed the parties should split the costs of the arbitration. Lang disagreed. (Compl. ¶¶ 81–82; Compl. Ex. D, DE 1 at 38.) The arbitrator, Judge Demarest, directed both parties to submit written arguments. They did so, and on February 12, 2021, she issued a decision. Judge Demarest confirmed that JAMS would administer the case in conformity with the Minimum Standards (*i.e.,* EMS, which impose costs on the employer), or it would not proceed. She opined that “Claimant [Lang] was clearly justified in believing he would not be required to pay *pro rata* costs,” and added that “Respondent’s [PTC’s] payment of the requested deposit and participation in the Preliminary Conference… appear to constitute a waiver of Comprehensive Rule 31(a) and implicit consent to the Minimum Standards.”

(Compl. Ex. D, DE 1 at 40–41.) (For simplicity, I will refer herein to "fee-sharing," or "fee-splitting," but by that I mean the sharing of fees, costs, and expenses that would be barred by the EMS.)

Nevertheless, the arbitrator found, it was necessary to determine whether the application of the EMS violated the Agreement to arbitrate, or would render it invalid. Under § 14(b)(iii) of the Agreement, she wrote, the "enforceability of the arbitration provisions" in the Agreement was an issue committed to a court, and could not be decided by the arbitrator. (Compl. Ex. D, DE 1 at 41; *see* n. 2, *supra*.) In the interim, the arbitration matter was stayed.[3]

Lang then filed this action. PTC has moved to dismiss the complaint and also moved to compel arbitration with *pro rata* fee sharing. (DE 3.)

## II. DISCUSSION

### a. Introduction

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2). "[W]hen it is clear on the face of the complaint that a validly formed and enforceable arbitration agreement exists and a party's claim is subject to that agreement, a district court must compel arbitration under a Rule 12(b)(6) pleading standard . . . ." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020).

"Before compelling a party to arbitrate under the FAA, we must consider two 'gateway' questions, one of which is 'whether the parties have a valid

---

[3] However, under the terms of the Parties' Agreement, this Arbitrator is precluded from rendering a ruling concerning the application of JAMS Comprehensive Arbitration Rule 31(a) to this Arbitration. In the absence of consent to abide by the Minimum Standards, the PTC Agreement requires judicial intervention. Claimant may, therefore challenge the enforceability of the arbitration provisions of PTC lnc.'s Proprietary Information Agreement in Court. Administration of the Arbitration will be held in abeyance pending a judicial ruling (see Standard C).

(Compl. Ex. D, DE 1 at 41)

arbitration agreement.'" *Bacon v. Avis Budget Grp.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Lamps Plus*, 139 S. Ct. at 1416).[4] PTC urges that the arbitration agreement is valid *and* that it also requires splitting of fees. Lang argues that the Agreement is not valid or enforceable for a compound reason. First, Lang argues that the court cannot force JAMS to administer an arbitration in a way that violates its EMS; thus, he argues, I cannot order *pro rata* fee sharing. Second, Lang argues that § 14(b)(iv) of the Agreement forbids any modification of the Agreement, so this court cannot order PTC to pay arbitration fees without voiding the Agreement.[5] (DE 8 at 9–10.) Adding to the difficulty of contract interpretation is a *renvoi*-like issue created by the Agreement's incorporation of the JAMS Comprehensive Rules, which on their face mandate fee-sharing but which, as applied by JAMS itself, are subject to JAMS's more specific procedural safeguards barring fee sharing in employment cases like this one.

To orient (or perhaps disorient) the discussion, I note the topsy-turvy alignment of issues and incentives here. The employee takes the position that he is not required to share responsibility for the costs of arbitration, but that if

---

[4] Another gateway question is one of contract interpretation: "whether the dispute is covered by the arbitration clause." *Bacon*, 959 F.3d at 599 n.6. Assuming the Agreement is enforceable, Lang does not dispute that his claims would fall within its scope.

[5] Lang also claims that the Agreement is unenforceable because cost sharing "imposes a substantial burden on Plaintiff's ability to pursue his claims." (Compl. ¶ 105.) For reasons explained below I do not reach this question, because I hold that cost sharing is not in fact required. I therefore do not undertake, *e.g.*, the factual inquiry into the costs of arbitration and the employee's ability to pay required by *Blair v. Scott Specialty Gases*, 283 F.3d 595, 607–10 (3d Cir. 2002).

The situation in this case is also distinguishable from that in which an employment contract requires the employee to pay arbitration fees, but the employer attempts to buy its way out of a finding of invalidity by offering to pay the fees. *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 285 (3d Cir. 2004); *Tharpe v. Securitas*, 2021 WL 1997385, at *2 (D.N.J. May 17, 2021). The Agreement here does not unambiguously require the employee to pay fees, and the exemption from any such requirement arises from the arbitration rules, not from a concession by the employer. *See infra.*

the arbitration Agreement requires him to pay half, then the Agreement is invalid. Thus an "adverse" ruling on costs may actually further the employee's larger agenda to avoid arbitration (remembering, of course that it is the employee who filed the demand for arbitration in the first place). PTC takes the position that the employee is required to arbitrate before JAMS, but also is required to split the cost. JAMS, per the arbitrator, takes the position that the employee is *not* required to split the cost, and indeed that JAMS is forbidden by its own policies to take on the case if the employee is required to do so. And the arbitrator has found that PTC has, in any event, waived its position by paying upfront costs in response to the arbitrator's letter invoking the JAMS EMS, the employment-arbitration policy requiring that the employer pay.

Farther than that, however, the arbitrator has declined to go. Judge Demarest correctly determined that issues of the interpretation or validity of section 14(a) of the arbitration Agreement must be decided by a court. Thus, resolution of the issues here requires the participation of both tribunals. Imposition of costs must (a) not fall outside the valid scope of the parties' Agreement to arbitrate, and (b) must be consistent with the JAMS rules. Issue (a) is for the Court, and issue (b) is for the arbitrator. But because the arbitration Agreement itself invokes the JAMS rules, the issues remain intertwined. I must here answer two essential questions:

1. Does § 14(a) of the Agreement, either explicitly or by reference to the JAMS Comprehensive Rules, mandate sharing of costs, expenses, or fees?
2. Does the answer to question 1 affect the enforceability of § 14(a), in whole or in part, and if so, is the invalid portion severable?

**Question 1: Does § 14(a) of the Agreement, either explicitly or by reference to the JAMS Comprehensive Rules, mandate sharing of costs, expenses, or fees?**

*(i) Interpretation of § 14(a)*

As noted, the arbitrator found the EMS applicable, but found that it was necessary for a court to determine whether the Agreement's arbitration clause mandates an allocation of fees that would render § 14(a) unenforceable.

The question of an explicit mandate is easily answered. Section 14(a) of the agreement does not explicitly say anything about allocation of arbitration fees or costs as between the parties.

The more difficult question is whether § 14(a) of the Agreement impliedly mandates sharing of costs *via* its provision that "arbitration will be conducted by a single arbitrator in accordance with the Comprehensive Arbitration Rules and Procedures of JAMS (www.jamsadr.com)." (Agreement § 14(a).) One of those Comprehensive Rules, Rule 31(a), states that "[e]ach Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule." (https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-31.) JAMS also, however, has a policy on Employment Arbitration Minimum Standards of Procedural Fairness ("EMS"), which is accessible on the same JAMS website. (DE 8, Ex. C; https://www.jamsadr.com/employment-minimum-standards/.) EMS Standard No. 6 states that, in employment cases like this one, "[t]he only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company." (*Id.*) (DE 8, Ex. C; https://www.jamsadr.com/employment-minimum-standards/.)

The Agreement's reference to conducting the arbitration "in accordance with" the JAMS Comprehensive Arbitration Rules and Procedures is general, and is not specifically directed to the issue of fees, costs, or expenses. JAMS specifically construes its own rules to require application of the minimal procedural guarantees of the EMS if the subject matter of the arbitration is employment.[6] Indeed, JAMS construes its rules to incorporate the EMS

[6] With irrelevant exceptions. The Minimum Standards do not apply "if the agreement to arbitrate was individually negotiated by the employee and employer, or if the employee was represented or advised by counsel during the negotiations." PTC

standards as a condition of its taking on an employment-related arbitration at all. *Id.* ¶ A ("If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the Minimum Standards of Procedural Fairness for Employment Arbitration."). PTC seeks to compel arbitration before JAMS, but also seeks to compel fee-sharing; the latter demand, however, wholly vitiates the former, because JAMS policies do not permit it to conduct an employment arbitration in which fees are shared.

Resolution of the dilemma requires that I draw a line between the Court's exclusive authority and matters committed to the arbitrator. As noted above, the two are surely interdependent. Still, on one side of the line is the Court's authority over the Agreement itself: *i.e.*, the authority to decide questions of "the enforceability, applicability or interpretation of any portion of this Section 14." (Agreement § 14(b)(iii).) On the other side of that line is the authority of the arbitrator, here JAMS, to interpret its own rules and administer the arbitration in accordance with them. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) ("[A]rbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it.").

As a matter of contractual interpretation, I read § 14(a) to require application of the Comprehensive Rules *as applied and interpreted by JAMS.* The Agreement does not explicitly promulgate its own set of rules. Nor does it mandate fee-sharing, which could be held to override the arbitration rules. Rather, it contemplates that the arbitration will be administered by JAMS in the ordinary course. The wording of the Agreement does not suggest that the Comprehensive Rules are being incorporated in the sense that an agreement might incorporate, say, a dictionary definition of a word. Rather, Section 14(a) states that the arbitration will be "*conducted* by a single arbitrator *in*

---

does not claim that these exceptions apply. (DE 8, Ex. C; https://www.jamsadr.com/employment-minimum-standards/)

*accordance* with" the JAMS Comprehensive Rules. The Agreement's reference to the Comprehensive Rules is a definition, but it is also a delegation.

True, it is for the Court to interpret § 14(a) and determine whether it is legally valid. Nothing in § 14(a), however, detracts from the general principle that the arbitral authority is the interpreter of its own rules and will "conduct" the arbitration in its usual manner. It is well-established that JAMS, when "conducting" an employment arbitration, applies certain minimal procedural safeguards contained in the EMS.[7] Under those EMS safeguards, the employer is to bear costs. The application of the EMS is thus part of the framework for "conduct[ing]" any employment arbitration at JAMS. The invocation of JAMS and its Comprehensive Rules must be understood within that framework.

Such an interpretation of the Agreement, moreover, comports with the parties' reasonable expectations. Parties, when agreeing to arbitrate employment disputes under JAMS rules and procedures, would not simultaneously be agreeing to a fee arrangement that would preclude arbitration under JAMS rules and procedures. Such an interpretation would self-undermine, rendering the arbitration Agreement largely ineffective, if not illusory.[8]

Here, I also consider the default principle of contract law that ambiguities in a contract are construed against the drafter. *Hovagimian v. Concert Blue Hill, LLC*, 488 Mass. 237 (2021). The drafter, PTC, might have included in the Agreement a provision addressing allocation of the disputed fees, costs, and expenses—for example, in § 14(h), where an employee would expect to find such information. PTC did not do so. By not doing so, it effectively left the issue to be worked out by JAMS.

---

7 Just as it applies parallel minimal procedural safeguards in consumer arbitrations. https://www.jamsadr.com/consumer-minimum-standards/

8 A theoretical additional possibility is that the arbitration might be conducted under JAMS rules, but not by a JAMS arbitrator. Neither party has suggested that it understood, or understands, the Agreement in that way.

The Agreement, then, is best read to stop short of prescribing fee-sharing; instead, it empowers JAMS to "conduct" the case "in accordance with" the Comprehensive Rules and Procedures. JAMS, we now authoritatively know, conducts such arbitrations in a particular manner: It has construed its rules, in employment-related arbitrations, to be subject to the overriding minimal procedural guarantees of the EMS, which prohibit fee-sharing. That is not a matter of the interpretation of Agreement § 14(a), but of the JAMS rules and procedures themselves. Section 14(a), in opting for arbitration by JAMS, must be construed as leaving room for JAMS to conduct arbitration in accordance with its minimal procedural standards, as embodied in the EMS.

*ii. Waiver*

In an ordinary motion to compel arbitration, the Court's contractual analysis would stop there. Here we know, however, as a result of this case's sojourn at JAMS, that there is another reason that fee sharing will not occur. The arbitrator's decision states that PTC has waived its objection to the requirement that PTC pay the costs of arbitration. PTC, by its conduct, gave up any arguable right it might have possessed to require that the employee share responsibility for the costs of arbitration. (Compl. Ex. D.)[9]

Lang's preprinted demand-for-arbitration form, sent on October 6, 2020, informed PTC that the JAMS EMS policy would apply. (DE 3-3 at 8–10.) JAMS's appointment-of-arbitrator letter, dated November 24, 2020, reiterated that

---

[9] Massachusetts adheres to the usual common law definition of waiver as the "intentional relinquishment of a known right." *Dynamic Mach. Works, Inc. v. Mach. & Elec. Consultants, Inc.*, 444 Mass. 768, 771 (2005) (quoting *Doujotos v. Leventhal*, 271 Mass. 280, 282 (1930)). The question of whether a right has been waived is one of fact and "can be inferred from a party's conduct and the surrounding circumstances." *Id.* at 774 (quoting *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., B.L.*, 767 F. Supp. 363, 372 (D. Mass. 1991)). Massachusetts courts have held that even the right to arbitrate itself can be waived through inaction. *See Home Gas Corp. of Massachusetts v. Walter's of Hadley, Inc.*, 403 Mass. 772, 775 (1989) ("The right to arbitration may be lost, as any contractual right which exists in favor of a party may be lost through a failure properly and timely to assert the right.") (internal quotation marks omitted).

JAMS's EMS policy would apply. (DE 3-3 at 28.) That letter of appointment stated that the arbitration would be "administered consistent with the enclosed JAMS policy on Employment Arbitration, Minimum Standards of Procedural Fairness" (*i.e.,* the EMS), and explained that "the only fee a consumer employee may be required to pay is $400 of the Filing Fee. All other costs, including the remainder of the Filing Fee, must be borne by the company." (*Id.*) The letter informed the parties that the "paying party has been billed a preliminary deposit." (*Id.*) PTC, as the "paying party," was in fact invoiced for $5,000, a preliminary deposit against fees or costs. PTC promptly paid the $5,000 invoice. (DE 8-1 at 13, Ex. D.) Only after paying that deposit and setting the arbitration in motion did PTC first claim, at a conference with the arbitrator, that the arbitration Agreement's reference to the Comprehensive Arbitration Rules and Procedures entailed *pro rata* fee-sharing. (Compl. ¶¶ 81–82.)

The above-described sequence of events was confirmed by the arbitrator, who, in a written decision, confirmed that PTC had thereby waived its objection to the imposition of costs beyond $400 of the initial fee:

> In light of the several communications from JAMS in response to Claimant's Demand For Arbitration advising that other than $400 of the initial Filing Fee, the employer would be responsible for the costs of the Arbitration, Claimant was clearly justified in believing he would not be required to pay pro rata costs. Respondent's payment of the requested deposit and participation in the Preliminary Conference, following notice that JAMS Minimum Standards, limiting Claimant's fee responsibility to $400, would be applied, and that JAMS would decline to administer the arbitration if consent to the Minimum Standards was not given, would, as Claimant argues, appear to constitute a waiver of Comprehensive Rule 31(a) and implicit consent to the Minimum Standards. However, under the terms of the Parties' Agreement, this Arbitrator is precluded from rendering a ruling concerning the application of JAMS Comprehensive Arbitration Rule 31(a) to this Arbitration. In the absence of consent to abide by the Minimum Standards, the PTC Agreement requires judicial intervention.

(Compl. Ex. D, DE 1 at 41)

The arbitrator, then, determined that PTC, by paying the initial deposit and going forward with arbitration, waived its objection to the EMS prohibition on fee-sharing. The arbitrator's ruling, however, was explicitly made subject to the Court's determination that it did not exceed the valid scope of the parties' Agreement to arbitrate. That is the determination I make here.

For the reasons expressed above, I have found that the arbitration Agreement is broad enough to accommodate the manner in which JAMS conducts employment-related arbitrations, incorporating the EMS standards. I hold in addition, and in the alternative, that nothing about the Agreement would stand in the way of PTC's waiving its rights under the Agreement, whatever they were, to demand fee-sharing.

**Question 2: Does the answer to question 1 affect the enforceability of § 14(a), in whole or in part, and if so, is the invalid portion severable?**

In consigning certain issues to this Court for decision, the arbitrator understood that interpretation, modification, or invalidation of the Agreement itself was reserved for the Court, and therefore beyond the scope of the arbitrator's authority. Should such modification or invalidation occur, a question would arise as to whether any invalid or unenforceable obligation is severable from the rest of the Agreement.

As to severability, the parties disagree about the relations among Sections 14(a), 14(b)(iv) and 19 of the Agreement. Lang argues that § 14(b)(iv) forbids the court from modifying the Agreement in any way. If such modification were to occur, Lang argues, the entire Agreement to arbitrate would be void. (DE 8 at 10–11.) In contrast, PTC argues that even if the Court were to find a *pro rata* fee-sharing provision unenforceable, it would be severable from the rest of the Agreement under the general severability provision (§ 19), and that PTC would be permitted to opt for arbitration in any event. (DE 10 at 6–9.)

For the reasons stated above, I have not modified or invalidated § 14(a). Fee-sharing will not be foisted upon Lang, so I do not reach the issue of

whether, in his circumstances, imposition of such costs would unduly burden his ability to assert his rights. *See* n. 5, *supra*. While I have interpreted § 14(a) in a particular manner, I have not found it "invalid or unenforceable as to any Claim Subject to Arbitration." (Agreement § 14(b)(iv)). The arbitration Agreement remains valid, and the provisions of § 14(b)(iv) and § 19 are not triggered.

In short, I return the parties to arbitration, holding that the arbitrator's ruling that PTC pay most of the fees, costs, and expenses does not exceed the valid scope of the Agreement.

## III. CONCLUSION

For the reasons set forth above, PTC's motion to compel arbitration is granted, but its request to impose *pro rata* fee-sharing is denied. A separate order will issue.

Dated: November 12, 2021

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**